HENDERSON COTTON MILLS v. LOCAL UNION NO. 584, TEXTILE WORKERS UNION OF AMERICA (AFL-CIO); TEXTILE WORKERS UNION OF AMERICA (AFL-CIO); DOUG ROSE, NICK LANGLEY, RUFUS STRANGE, M. LUTHER JACKSON, VERNON W. BURNETTE, ANDREW C. TURNER, CARL C. MOORE, RALPH F. HARRIS, WILLARD O. FAULKNER, JAMES B. H. ROBERSON, ALBERT L. BATTON, HENRY W. STALLINGS, EDWARD J. OFTEN, JAMES E. REARDON, RICHARD F. PARROTT, CLARENCE E. HARPER, JOHN E. STALLINGS, JOE HALE, JOHN LONG, HARRY HICKS, EDWIN ELLINGTON, COY L. PEGRAM, SHERMAN FERRELL, FRANK O. TURNER, LINVIL NELSON, SIDNEY WALLACE, PHIL HARRIS, ELMORE MURPHY, MACON RENN, JOHN OWEN, CLIFTON CARTER, SANDY SAM ROBERSON, JAMES BARKER, EDWARD MOSELEY, WILLIAM TART, MELVIN BRAME, HERMAN MULCHI, R. TALMADGE HARPER, BILLY THOMPSON, JOHN G. MULCHI, JAMES M. WILKERSON, AND ALL OTHER PERSONS TO WHOM NOTICE AND KNOWLEDGE OF THIS ACTION MAY COME.

(Filed 25 November, 1959.)

**1. Appeal and Error § 38—**

Assignments of error not discussed in the brief are deemed abandoned. Rule 28 of the Rules of Practice in the Supreme Court.

**2. Constitutional Law §§ 31, 37: Contempt of Court § 6: Criminal Law § 155—**

In proceedings under an order to show cause why respondents should not be held in contempt of court for the willful violation of a restraining order, the admission of affidavits tending to establish specific acts done by respondents in violation of the order will not be *held* for error when respondents do not object to the admission of the affidavits or indicate any desire to cross-examine any affiant on the hearing, or move to strike, or except to the order on such ground, since respondents will be held to have waived their rights of confrontation.

**3. Contempt of Court § 6—**

Evidence tending to show that the restraining order issued in the

cause had been conspicuously posted on bulletin boards at plaintiff's plant and at the court house door, published in the local newspaper, its contents publicized by radio and that the import of the order was of general knowledge throughout the county, that the labor union of which respondents were members had been served with the order, together with respondents' own testimony on the hearing of the order to show cause *is held* sufficient to support the finding of the court that the respondents had actual notice of the substance of the order, it not being required that plaintiff show by positive evidence that respondents had actually read the restraining order or that it had been read to them.

HIGGINS, J., not sitting.

APPEAL by respondents Ned Thomas and Calvin Pegram from *Bickett, J.,* in Chambers, 7 March 1959, at Henderson, VANCE Superior Court, docketed in this Court as case No. 390.

This appeal is from an order entered 7 March 1959, adjudging Ned Thomas and Calvin Pegram and each of them in contempt "for wilfully, knowingly and intentionally" violating the restraining order of 13 February 1959, by Bickett, J., based on facts alleged in the verified complaint filed in this action.

The temporary restraining order issued on 13 February 1959, was in full force and effect on March 7th, 1959. By order of 5 March 1959, it was continued in force and effect until the trial on its merits.

The contents of the restraining order, in pertinent parts, having been set out in the case of *Henderson Cotton Mills v. Local Union No. 584, Textile Workers Union of America (AFL-CIO) et al, ante,* 240 and docketed in this Court as case No. 393, will not be set out herein.

Service of summons, complaint and restraining order was promptly made on all (except five individuals) defendants.

The respondents Ned Thomas and Calvin Pegram were not named as defendants in this action, nor were they served with summons, complaint or restraining order prior to the issuance of the show cause order.

On 26 February 1959, plaintiff through its attorney representing unto the court that Ned Thomas and Calvin Pegram have wilfully done certain acts and things prohibited by the restraining order of 13 February 1959, as set forth in affidavit of Raymond Ayscue, and that the said Ned Thomas and Calvin Pegram had notice and actual knowledge of the terms, conditions and requirements of the restraining order as would be shown by affidavits attached thereto, moved the court that an order for a show cause be issued and directed to Ned Thomas and Calvin Pegram, ordering them to appear and show

cause, if any there may be, why each of them should not be punished as for contempt of court.

Pursuant thereto and on 26 February 1959, Bickett, J., ordered Ned Thomas and Calvin Pegram to appear before him at 2:30 P.M., on the 3rd day of March, 1959, and show cause, if any there be, why each of them should not be punished as for contempt of court. And the court ordered that this order to show cause be served upon Ned Thomas and Calvin Pegram in manner directed, which was done on 27 February 1959.

The respondents filed answer, duly verified by both of them, to the notice to show cause in which they deny the matters and things complained of in the notice which alleges conduct on their part, or either of them, in the manner charged; that while they were at the Ayscue house, they deny that either of them threatened Ayscue in any manner, but only discussed with him in a moderate and friendly way about not returning to work at the mill; and they represent to the court that they had no intent at any time to commit any wilful or unlawful act in violation of said restraining order and have the utmost respect for the court and its orders and mandates. However the respondents did not aver that they or either of them did not have full knowledge of the existence of the restraining order and of the contents thereof.

And upon the hearing at the time and place designated in the order to show cause, each of the respondents appeared in person and represented by counsel, and having filed answer as hereinabove set forth, and plaintiff being represented by counsel:

The record of case on appeal shows that plaintiff offered in evidence two affidavits of Raymond Ayscue, and one of Sheriff Cottrell. The contents of the first affidavit of Ayscue, dated 25 February 1959, read as follows:

"My name is Raymond Ayscue, and I live at 1284 Walters Street, which is just North East of the Henderson Cotton Mills, I work in the Henderson Cotton Mill in the Spinning Room. I came to work on Monday, February 16, 1959, when the mill opened and have been at work continuously since that time.

"Last Tuesday night, February 24, 1959, about 8:40 P. M., I heard a knock at my door. Before opening the door, I asked who was there, and the voice answered, 'Ned'. I recognized this man by his voice as Ned Thomas. I tried to cut on my porch light, but found they had unscrewed the bulb on the porch. I told him I would not open the door until they put the bulb back in so I could see who was there with him. They put the bulb back in,

and when the light came on, I opened the door and saw Ned Thomas and Calvin Pegram. When I opened the door I stepped back and both Ned Thomas and Calvin Pegram entered my house. I told them both to leave, but they refused. I had my 22 rifle with me when I answered the door, and I was standing in the corner by the door. I could tell from the voices I heard that there were at least two other people outside in the darkness whom I could not recognize. The first thing Ned spoke was, 'We have come to talk to you about going to work.' Pegram said, 'If you go in in the morning we will kill you.' Ned then said, 'You know we do not want you to go in, and if you don't go in we will get a contract.' He then said, 'If you go in, we are going to kill you too.' I ordered them out of my house again. When I ordered them out that time, Calvin Pegram stepped in front of Ned, and he said, 'You know me, Raymond, and I would not go back. If you do go back in that G-d D--m Mill, we are going to kill you.' They stood there, and I asked them again to leave. At that time I had my rifle beside me, but was not pointing it at either of them, and when Pegram came closer to me, then I picked the rifle up and Pegram grabbed the rifle and I snatched it away from him and asked them to leave again, and they told me again, 'If you go in that Mill, we are going to get you.' At that time I picked the rifle up, and asked them to get out. As Calvin Pegram turned to leave, Ned said to me, 'You really meant that thing.' And I said, 'Yes'. My wife closed the door, and they said, 'We will get you tonight.' That was all, and they left."

And the contents of second affidavit of Ayscue dated 3 March 1959, are as follows:

"That the acts of Ned Thomas and Calvin Pegram described in my affidavit of February 25, 1959 were wilful violations of the Temporary Restraining Order issued by Judge William Y. Bickett on February 13, 1959 in the case of *Henderson Cotton Mills v. Local No. 584, et al* and were committed with actual knowledge of said order."

The contents of the Sheriff's affidavit date 3 March 1959, are as follows:

"My name is E. A. Cottrell and I am Sheriff of Vance County; that on February 14, 1959, two copies of the Temporary Restraining Order, issued by Judge William Y. Bickett in the case of *Henderson Cotton Mills v. Local No. 584, et al*, were conspicuously posted on bulletin boards set up 75 feet on either side of each gate at the Henderson Cotton Mills, and two copies post-

ed on either side of the Court House Door in Henderson, N. C.; I also know of my own knowledge that a copy of this Temporary Restraining Order has been published in Henderson, and the contents thereof publicized over the Radio, and that this matter is of general knowledge throughout the County."

The respondent Calvin Pegram testified that he had heard about the restraining order and knew that he was forbidden by the restraining order of the court to threaten Ayscue. He denied doing so.

Following the hearing on the show cause order, the court entered order in open court at Henderson on 7th day of March 1959, in pertinent part as follows: "After hearing the affidavit presented by plaintiff, and counsel for respondents failing to offer any affidavits, but after the testimony of all the witnesses offered by respondents and by counsel for respondents, and counsel having been heard, and upon consideration of all affidavits filed and the oral testimony of both respondents, and argument of counsel, the court now finds the following facts:

"That Ned Thomas and Calvin Pegram by means of the Restraining Order being conspicuously posted on bulletin boards set 75 feet on either side of each gate of the Henderson Cotton Mill, and two copies of said Restraining Order being posted on either side of the Vance County Court House door, and a copy thereof being published in the Henderson Daily Dispatch, a newspaper published in Vance County, on February 14, 1959, and the contents having been publicized over the radio and copies thereof being served on Local Union No. 584, Textile Workers Union of America, and that the said Ned Thomas and Calvin Pegram are members of Local No. 584, Textile Workers Union of America, and from the oral testimony by the said Ned Thomas and Calvin Pegram in said cause that they had actual knowledge of the Restraining Order issued by Judge William Y. Bickett on February 13, 1959.

"That as to Respondent, Ned Thomas, the Court finds as a fact that he wilfully, knowingly and intentionally violated the Restraining Order of February 13, 1959, by going to the home of Raymond Ayscue, an employee of Henderson Cotton Mills, who had been working in said mill continuously since February 16, 1959, when the mills opened, in the night time, and threatening to kill him if he went to work in the Henderson Cotton Mill the next morning, thereby threatening and intimidating an employee of the Henderson Cotton Mill who was seeking to work in plaintiff's plant.

"That as to Respondent Calvin Pegram, the court finds as a fact that he wilfully, knowingly and intentionally violated the Restraining Order of February 13, 1959, by going to the home of Raymond Ayscue, an employee of plaintiff Henderson Cotton Mills, who had been working in said mill continuously since February 16, 1959, when the mill opened, in the night time and threatening to kill him if he went to work in the Henderson Cotton Mill the next morning, thereby threatening and intimidating an employee of Henderson Cotton Mills who was seeking to work in plaintiff's plant.

"The court further finds that the above acts were wilfully, knowingly and intentionally committed by each of the Respondents for the purpose of intimidating and threatening a worker and an employee of said Henderson Cotton Mills who was seeking to work in plaintiff's plant.

"Now, Therefore, the Court does hereby find, and It Is Ordered and Adjudged that the Respondents Ned Thomas and Calvin Pegram and each of them are in contempt of this Court for wilful and intentional violations of the Restraining Order issued by this Court on February 13, 1959.

"It is Further Ordered, Adjudged and Decreed that each of them be punished for the said contempt as follows:

"That Ned Thomas be confined to the common jail of Vance County, North Carolina, for a period of thirty (30) days and pay a fine in the sum of $250.00.

"That Calvin Pegram be confined to the common jail of Vance County, North Carolina for a period of thirty (30) days and pay a fine in the sum of $250.00."

Respondents and each of them except (1) to the findings of fact and conclusions of law of the court, and (2) to the judgment against each of them, and gave notice of appeal to the Supreme Court, and assign error.

*Perry & Kittrell, Chas. P. Green, A. W. Gholson, Jr.,* for plaintiff, appellee.

*W. M. Nicholson, James B. Ledford, James J. Randleman, L. Glen Ledford* for respondent appellants.

WINBORNE, C. J.　Here, as in case No. 385, *Harriet Cotton Mills v. Local Union No. 578, Textile Workers Union of America (AFL-CIO) et al., ante,* 218 and in No. 389, *Henderson Cotton Mills v. Local Union No. 584, Textile Workers Union of America (AFL-CIO) et al, ante,*

234 and in No. 393, *Henderson Cotton Mills v. Local Union No. 584, Textile Workers Union of America (AFL-CIO) et al, ante,* 240 all at this term of Supreme Court, the exception quoted in the appeal entries is the only one appearing in the record. Notwithstanding this, appellants, Respondents Ned Thomas and Calvin Pegram in their assignments of error attempt to break this single exception into four parts and refer to four exceptions.

It is noted that only two of these four assignments of error are discussed in appellant's brief. The others therefore are deemed as abandoned. Rule 28 of the Rules of Practice in the Supreme Court, 221 N.C. 544, at p. 562, *et seq.* See also like ruling in case No. 389, *Henderson Cotton Mills v. Local Union No. 584, Textile Workers Union of America (AFL-CIO) et al, ante,* 234 and case No. 393, *Henderson Cotton Mills v. Local Union No. 584, Textile Workers Union of America (AFL-CIO) et al, ante,* 240.

And of the two assignments of error with respect to which discussion is made in appellant's brief it is contended that the Respondents, and each of them, were denied the right to face and cross-examine their accusers, contrary to the laws of the State of North Carolina. Here as in case No. 385, *Harriett Cotton Mills v. Local Union No. 578, Textile Workers Union of America (AFL-CIO) et al, ante,* 218 and in case No. 393, *Henderson Cotton Mills v. Local Union No. 584, Textile Workers Union of America (AFL-CIO) et al, ante,* 240 the Respondents did not object to the introduction of the affidavits when offered, nor did they move to strike the evidence contained therein, or any part of it; nor did they request an opportunity to examine Raymond Ayscue or the Sheriff, the makers of the affidavits or either of them; nor did they except to the order of Bickett, J., on the ground set forth in the assignment of error; and, therefore, on the authority of the opinion in case No. 385, referred to above, this assignment of error is overruled.

Appellants' remaining assignment of error is based on their general exception to Judge Bickett's order and to the findings of fact and conclusions of law. This exception is broadside, and therefore subject to denial.

Nevertheless, a careful examination of the record reveals that the facts found by the court with respect to the wilful violation of the restraining order by each of the respondents are supported by competent evidence and such findings are binding upon appeal—as in case No. 389, referred to above, and decisions there cited. Hence on authority thereof, as well as of cases numbers 385 and 393, above referred to,

the order of Bickett, J., dated 7 March 1959, from which this appeal is taken, will be and it is hereby

Affirmed.

HIGGINS, J., not sitting.